UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:25-cr-10470-JEK |
| | ) | |
| Kenneth Pacheco | ) | |
| | ) | |

**SENTENCING MEMORANDUM ON BEHALF OF KENNETH PACHECO**

I.      **Introduction**

Kenneth Pacheco has taken responsibility for the very serious offense of making threats towards a federal law enforcement officer. The threats originated during text correspondence with his sister in October, 2025, and in violation of 18 U.S.C. § 875(c). Kenneth experienced a serious mental health crisis during this period; he was either chronically homeless or hospitalized on several occasions during the summer leading up to his offense. His family reached out to authorities with these messages hoping to get more psychiatric help for Kenneth. Those text messages formed the basis of this criminal prosecution. Mr. Pacheco has now been in custody based on this conduct since October 16, 2025, approximately 8 months. Mr. Pacheco was not psychiatrically stable at the time, a fact which clearly does not obviate responsibility for this crime, but nevertheless provides additional context as the Court balances the 3553(a) factors (including how a period of structured supervised release will form perhaps the most significant part of any sentence imposed).

This period of incarceration has resulted in an unexpected period of stability and reflection for Mr. Pacheco. Following Kenneth's threatening communications, he was promptly arrested.  His perspective in custody evolved from initially feeling betrayed by

1

his family for revealing his threatening text message communications about the law enforcement officer, to instead feeling grateful that his error has given him future opportunities following his effective medication adjustment in the jail setting. Kenneth clearly recognizes the wrongfulness of his conduct. Now, he is capable of reflecting on these wrongful actions as well as thinking ahead to what his life will hold following this period of incarceration.

His father writes:

> During his incarceration, I have noticed a significant and positive change in Kenneth. For years, I have encouraged him to focus on his mental health, and I believe this period has given him the time and structure needed to reflect and grow. He has taken anger management courses and used this time in a stable environment to better understand himself and his actions. This has had a noticeable impact on his overall well-being…Our entire family stands behind Kenneth and is ready to support him in any way possible. We are fully willing to assist him in participating in any programs or conditions set forth by the Court to help ensure his continued progress and successful reintegration.

*Letter from Timohy Pacheco, father of the defendant, Exhibit A.*

The plea agreement in this case takes into consideration the criminal conduct, the United States Sentencing Guidelines, and the 3553(a) factors. The government agrees to recommend a sentence of 18 months of incarceration followed by 3 years of supervision in the community. Mr. Pacheco respectfully asks that the court consider the 3553(a) factors as well as the practical considerations of the time spent in continuous custody to date and impose a sentence of 15 months custody followed by 3 years supervised release. When accounting for the nature and circumstances of this offense, as well as the history and characteristics of the defendant, and the need for this sentence to address rehabilitation and Kenneth's mental health needs, a sentence of 15 months followed by 3

2

years of supervised release is the minimally sufficient term which adequately addresses all of the sentencing criteria.

The Court's attention should focus principally on the conditions of supervised release that will best help Mr. Pacheco to succeed and reintegrate successfully into the community. Specifically, conditions should include: requiring Mr. Pacheco to live at the Coolidge House for a period of up to 6 months, until he is able to formulate a stable residence plan for Probation's approval; maintaining mental health counseling; and cognitive behavioral therapy. Mr. Pacheco's family remains supportive of him and will work with him to secure a stable long-term housing plan.

This memorandum is accompanied by letters of support filed as Exhibits A-D.

## I.    Background, History, and Characteristics of Mr. Pacheco

Mr. Pacheco experienced three pivotal events in his life that have left significant emotional scars: abuse suffered as a child, the loss of his family home due to fire, and the overdose death of his beloved older brother. These adverse traumas presented themselves to a person who already struggled with his mental health throughout his childhood and into his adult years. For much of his adult life, he has been on and off prescribed psychiatric medications, experienced homelessness, and struggled with substance misuse. The events of this criminal offense manifested amidst a downward spiral and decline in his mental health, all of which led directly to this incarceration. Though not ideal, this period of incarceration has clearly resulted in a period of stability, giving Kenneth the room to look ahead to what his life would look like with utilizing services in the community.

3

██████████████████████████████████████████████████████████████

████████

What's more, the loss of his brother remains a trauma that Mr. Pacheco must address. Throughout his childhood and adult years, Mr. Pacheco relied heavily on the relationship he had with his older brother Chris and his younger sister Jessica. Together they navigated and endured the divorce of their parents and the chaotic aftermath. The most stable "parental" relationship that Kenneth and his siblings experienced was with their paternal grandparents, as noted briefly above. Mr. Pacheco found his grandparents' home to be a safe place for him, away from the violent and chaotic neighborhood his family had moved to in his teenage years. He often stayed there for weekends as a teenager, and then in his 20's this was a respite he always returned to. Eventually, he moved into this family home, along with his father and older brother Chris, and this became his home. In April 2021, following months of COVID lockdowns, this family home was completely destroyed in a fire. It was a devastating emotional and financial loss for the family. Mr. Pacheco was in his late 20's at the time. He became displaced and eventually homeless, living in tents for months at a time.[1]

Just a few months after the fire, the tragedy compounded. Mr. Pacheco's older brother Chris, who he looked up to in simply every way, overdosed on fentanyl in July 2021. He could not be revived. Mr. Pacheco was away at the time of Chris' passing, and felt profound regret that he could never adequately process this loss with the rest of his family. He utterly internalized his pain and his grief. Then, his paternal grandfather died

---

[1] His father moved into a hotel following the fire, and his older brother Chris also began living in a tent.

5

just one month later. It all was a tremendous period of loss and hopelessness for the entire family, but for Mr. Pacheco, he did not have the necessary tools and family push to take care of himself in the aftermath.

Mr. Pacheco's various friends allowed him to stay for periods of time but he still frequented a tent encampment in the woods. Over time, his remaining family became increasingly worried about him, especially as they coped with their own grief from losing Chris. His sister Jessica, a behavioral specialist, sensed his need, and was the one actively looking for him and seeking the involvement of the court to address his mental health needs by seeking to initiate an involuntary commitment for mental health crisis. By the summer of 2025, Jessica became increasingly worried about the overall wellbeing of her brother and felt desperate to find some kind of long-term support to help him. She astutely summarizes the reality he was living with leading up to this crime:

> Kenneth has a history of mental health issues, issues with substances, and has been homeless for a number of years. The homelessness resulted when our childhood home in Raynham, MA burnt down in April 2021, and the loss of our oldest brother in July of 2021. With this trauma and loss, Kenny began to cope with drugs and alcohol. Kenneth has stated that he would like to start a fresh new life and get help with his anger. He not only is willing to get help for his substance issues, but for his mental illness as well. Kenny has not willingly accepted help with his mental health since he was a minor, and refuses medications or stops taking them. Since being in (jail), Kenneth completed an Anger Management Course. He would like to obtain his GED once he is sentenced. My heart is heavy and it is my hope that resources develop from this case, especially with his willingness to get the help he needs.

Exhibit B.

## II.    Nature and Circumstances of this Offense

The offense conduct is accurately presented in detail in the Presentence Report.

6

See ¶¶ 9-17. Mr. Pacheco experienced a mental health decline observed by law enforcement beginning in May 2025, when he began making concerning posts on Facebook. Officers intervened and contacted Mr. Pacheco regarding those online comments. Mr. Pacheco was not arrested and remained in the community. In July of 2025, family members reached out to the same law enforcement contact to share concerns about his apparently declining mental health. The same Task Force Officer responded and again reached out to Mr. Pacheco. Mr. Pacheco responded, but declined help, did not reveal his location, and hung up the phone. The Task Force Officer then reached out to local authorities to perform a wellness check, and Mr. Pacheco was involuntarily admitted to a hospital for a mental health evaluation. Mr. Pacheco ultimately left the hospital. He was not taking his medications, and returned to his unstable living situation. The instability continued, with Mr. Pacheco sending concerning messages to relatives and friends, culminating in the message sent to his sister containing the threat against the officer who had been attempting to intervene with support. When Mr. Pacheco's mother and sister brought the text message to the attention of law enforcement, they were hoping to receive additional mental health support for Kenneth. With the failed interventions as a backdrop, Mr. Pacheco was arrested and charged in first the state (See Dkt. 2531-CR-002493) and subsequently this Court based on the threatening communication. Mr. Pacheco accepts responsibility for this conduct. He has now been in continuous custody since October 16, 2025 in primary state custody, based on this conduct.

Today, Mr. Pacheco adheres to his medications. He feels clearheaded and rejects his past behavior and expresses remorse and care for the recipient. From detention, he communicates regularly with his sister, mother, father, and friends. His family remains

7

supportive, despite rejecting this criminal behavior. His cousin writes "I want to be honest – Kenneth has not always taken the easiest or most straightforward path in life. He can be strong-willed and set in his ways at times. But what I have also seen is that he is capable of recognizing when he is wrong. He does not lack awareness – he reflects, and he learns. I have seen him take accountability for his actions and understands when he needs to do better." Exhibit C.

The nature and circumstances of this offense suggest a primary goal for mental health treatment over extended incarceration. Kenneth experienced significant punishment through incarceration over the last year. He also experienced benefits from continued medications over the last year, taking advantage of courses offered within the facility including: "Anger Management" (A course helping to develop self-control over actions and manage reactions); "Stressful Life Events" (a course examining PTSD signs, symptoms, triggers, and treatment options);  "Critical Thinking" (examining how quick reactions to events can result in behavior that is difficult to reverse, and how to think more carefully before reacting). Mr. Pacheco's gravitation towards these types of courses demonstrates an openness as to the kinds of services may exist in the greater community.

Obviously, Mr. Pacheco will need to be out of the prison setting to receive the particularized mental health professional help that will best address his trauma background. Once he is in the community and supervised through U.S. Probation, he will be able to connect with services and to begin to transition forward. Residing at the Coolidge House in Boston and establishing care with a mental health professional will be a starting point for Mr. Pacheco. From there, Kenneth can focus on finding work and evaluating the best long-term environment, in conjunction with his family and

supervising officer.

### III.    Pre-Sentence Report & Plea Agreement

The plea agreement includes the parties' concurrence as to the offense level guideline calculation and a recommendation from the government for an appropriate sentence based on the full totality of circumstances: 18 months of custody followed by 3 years of supervised release. Mr. Pacheco has been in continuous state then federal custody since October 16, 2025. The Bureau of Prisons should properly credit the time spent from October 16, 2025 until April 15, 2026 while he was in primary state custody because it is from a related case where no time was imposed. See, 18 U.S.C. § 3585(b). Dkt. 2531CR002493 and PSR at 1. On April 29, 2026, Mr. Pacheco resolved a probation revocation matter (PSR ¶ 38) and received a sentence of 3 months, which will not automatically be credited by BOP. Mr. Pacheco thus asks for an overall sentence to be imposed of 15 months, as reasonable and just under the full totality of circumstances in this case.

### IV.    Sentencing Goals and Fashioning the Appropriate Sentence

Pursuant to 18 U.S.C. §3553(a)(2), the Court must consider the need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. Here, an overall sentence of 15 comports with each of the sentencing criteria: it is sufficient, but not greater than necessary, to achieve the sentencing goals under 18 U.S.C. § 3553(a)(1). *United States v.*

*Kimbrough*, 128 S.Ct. 558 (2007); *United States v. Booker*, 125 S.Ct. 738 (2005); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008); *United States v. Rodriguez*, 527 F.3d 221 (1st Cir. 2008).

### (A)  Seriousness of the Offense, Respect, Just punishment, Rehabilitation as a Primary Focus

This is a serious offense, and eighteen months in custody is certainly a serious punishment for the conduct in this case. And it represents a greater term than at least one case identified by counsel in this District which involved threatening conduct in addition to words. *See United States v. Robbins*, 11-cr-10156-MLW (Defendant engaged in threats toward employees at Stonehill College, where he had previously attended prior to being dismissed following disciplinary actions stemming from a pattern of on-campus fighting, and received sentence of 10 months, representing the low end of the guideline range of 10-16 months).

The requested sentence in this case balances incarceration with rehabilitation. The court should consider rehabilitation as a primary and serious focus of the sentence in this case. The Supreme Court has recognized that even a term of probation constitutes significant punishment.  See *Gall v. United States*, 128 S.Ct. 586,595-96 (2007) (straight probation without home confinement is punitive and the conditions imposed "substantially restrict ... liberty," Emphasis added).  Here, Kenneth has served almost eight months in custody since his arrest in this case and has already demonstrated that he is open to continued rehabilitation in the community. The focus going forward should be on addressing future needs in the community.

Importantly, the court in *Gall* also recognized that imposing a term of incarceration in the name of promoting respect for the law in a case where a particular

defendant's unique circumstances suggest a more lenient sentencing alternative actually could promote *disrespect* for the law:

> Moreover, the unique facts of Gall's situation provide support for the District Judge's conclusion that, in Gall's case, "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing."

*Id.*

Supervised release is a significant part of a criminal sentence and for this defendant in particular, it is an essential part of the sentence. Further incarceration adds no appreciable difference to further the sentencing goals. Instead, Kenneth has a great deal of work to do on supervised release to address his own needs and future. He will have the support of United States probation to guide him and hold him to account, and he has the support of his family behind him.

A primary goal will be to put conditions in place so that Mr. Pacheco gets the help he needs and so that the public is protected. Following incarceration, conditions of supervision must promote goals of rehabilitation and stability in the community, including:

- Reside in the Coolidge House for a period of up to 6 months, until a stable living situation can be approved
- Mental health counseling and treatment in the community, following the recommendations of his doctor
- Cognitive Behavioral Therapy in the community

### V.    Conclusion

Based on all of the circumstances in this case, the Court can properly find that a sentence of 15 months and 3 years of supervised release is appropriate under the 3553(a) factors and sentencing goals. Mr. Pacheco needs continued mental health treatment and

support, not lengthy incarceration. The requested sentence balances incarceration

(punishment) with rehabilitation in the community. It is a sentence that reflects the

seriousness of the offense, provides just punishment, and promotes rehabilitation.

> Respectfully submitted,
>
>
> Kenneth Pacheco
> By his attorney
> /s/ Cara McNamara
>
> Cara McNamara
> BO 712096
> Federal Defender Office
> 51 Sleeper Street, 5th Floor
> Boston, MA 02210
> Tel: 617-223-8061

Date: May 28, 2026.

### CERTIFICATE OF SERVICE

I, Cara McNamara, hereby certify that this document(s) filed through the ECF system
will be sent electronically to the registered participants as identified on the Notice of
Electronic Filing (NEF) on May 28, 2026.

> */s/ Cara McNamara*
> Cara McNamara

12